UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Michele Rubin,

                                    Plaintiff,

                - against -

Kilolo Kijakazi,
*Acting Commissioner of the Social Security Administration*

                                    Defendant.

---

22 Civ. 4697 (PED)

<u>**DECISION AND**</u>
<u>**ORDER**</u>

**PAUL E. DAVISON, U.S.M.J.:**

## I.   INTRODUCTION

Plaintiff Michelle Rubin brings this action pursuant to 42 U.S.C. § 405(g), challenging the decision of the Acting Commissioner of the Social Security Administration that denied her application for Social Security benefits.  [Dkt. 1.]  Plaintiff filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking to reverse the Acting Commissioner's decision that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 423 *et seq*., and to remand the matter for further administrative proceedings.  [Plaintiff's Motion at Dkt. 14; Memorandum of Law at Dkt. 15.]  The Acting Commissioner filed a cross-motion for judgment on the pleadings to affirm the decision and to dismiss this action. [Defendant's Motion at Dkt. 16; Memorandum of Law at Dkt. 17.]  The parties consented to my jurisdiction on July 7, 2022.  [Dkt. 10.]  For the reasons that follow, the Acting Commissioner's motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

## II.   BACKGROUND

Plaintiff was born on January 10, 1967 and she graduated college in 1988.  [R. 223, R.

228.]¹  She previously worked as a buyer in the retail industry.  [*Id.*]  Prior to that, she worked as

a retail sales person.  [*Id.*]  She contends that she is disabled due to major depressive disorder.

[R. 78.]  Plaintiff alleges that the onset of her disability was February 5, 2017.  [R. 190.]

Plaintiff's date of last insured was December 31, 2019.  [R. 291.]²

## A.    Procedural History

On September 20, 2019, Plaintiff filed for a period of disability and/or all insurance

benefits.  [Application at R. 190-98.]  Plaintiff's application was denied and she requested

reconsideration. [Denial at R. 94-99; Request for Reconsideration at R. 103-04.]  Upon

reconsideration, Plaintiff's application was again denied, and so she requested a hearing before

an Administrative Law Judge ("ALJ").  [Reconsideration Notice at 105-15; Request for ALJ

Hearing at R. 118-19.]  A telephonic hearing was held on January 14, 2021 before ALJ Flor

Suarez.  [R. 8.]  Plaintiff appeared with counsel and testified at the hearing.  [R. 19-35.]  A

vocational expert also testified at the hearing.  [R. 35-51. ]  On May 26, 2021, the ALJ issued a

written decision in which she concluded that Plaintiff was not disabled within the meaning of the

---

¹ Notations preceded by "R." refer to the certified administrative record of proceedings relating to this case submitted by the Acting Commissioner in lieu of an answer.  [Dkt. 16.]  The Court conducted a plenary review of the entire administrative record, familiarity with which is presumed.  In light of plaintiff's narrow challenge to the ALJ's decision, I assume knowledge of the facts surrounding plaintiff's medical treatment and do not recite them in detail, except as germane to the analysis set forth below.

² "In order to retain eligibility for benefits, Social Security Disability claimants must earn at least a minimum threshold amount of Social Security wages within a set period preceding their claim." *Oomen v. Berryhill*, 2017 WL 1386355, at *1 n.2 (S.D.N.Y. Apr. 17, 2017). The date of last insured "is the last day on which a claimant is last eligible for disability insurance benefits." *Id.* (internal quotation marks omitted).  "A claimant is not eligible to receive benefits for any disability beginning after that date." *Id.* (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.130, 404.315; *Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989).

Social Security Act ("SSA" or the "Act") and denied Plaintiff's application.  [R. 72-87.]  The

ALJ's decision became the Acting Commissioner's final decision on May 13, 2022 when the

Appeals Council denied Plaintiff's request for review.  [R. 1-3.]  Plaintiff timely commenced this

action on June 6, 2022.  [Dkt. 1.]

**B.      Medical Evidence**

**1.      Prior to Plaintiff's Alleged Onset Date, February 28, 2018**

Plaintiff began receiving treatment at the Karen Horney Clinic on May 8, 2014.  [*See*

R.765.]  At the Karen Horney Clinic, she received treatment for her severe major depressive

disorder, which included attending weekly individual therapy sessions and medication

management by Dr. Henry Paul.  [R. 524-766.]

**2.      After Plaintiff's Alleged Onset Date But Prior to Plaintiff's Date of Last
        Insured, December 31, 2019**

On March 5, 2018, Plaintiff had an appointment with social worker Danielle Kowalski.

[R. 522.]  Ms. Kowalski observed that Plaintiff was depressed and anxious, but also that she was

adequately groomed, had a full range of affect, and was oriented to time, place, and persons.

[*Id.*]  Ms. Kowalski noted that Plaintiff denied obsessions and compulsions, hallucinations,

delusions, and suicidal ideation.  [*Id.*]  Plaintiff also indicated that she was complying with her

medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session, Plaintiff reported

difficulty sleeping and feeling unsafe as the result of an argument she had with an Uber driver.

[*Id.*]

On March 16, 2018, Plaintiff had her weekly appointment with Ms. Kowalski.  [R. 520.]

Ms. Kowalski observed that Plaintiff was depressed, but that she was adequately groomed, had a

full range of affect, and was oriented to time, place, and persons.  [*Id.*]  Ms. Kowalski further

observed that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  During their session, Plaintiff also indicated that she was complying with her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff reported difficulty functioning due to work related stress, and social and family difficulties.  [*Id.*]  Plaintiff reported fatigue, difficulty eating, and difficulty sleeping on a daily basis.  [*Id.*]  On March 19, 2018 Ms. Kowalski noted that Plaintiff provided her with notice that she would be cancelling this session because she would be out of town for work-related engagements.  [R. 518.]

Plaintiff had a meeting with Henry Paul, M.D. on March 21, 2018.  [R. 515.]  Dr. Paul noted that Plaintiff stated that she was depressed and Dr. Paul further noted that they would try Abilify.  [*Id.*]  Dr. Paul also conducted a psychiatric examination of Plaintiff.  He observed that Plaintiff was adequately groomed, cooperative, and well-related.  [R. 515.]  He further observed that Plaintiff had normal psychomotor control, her eye contact was good, and her rate of speech, volume of speech, articulation of speech, coherence of speech, spontaneity of speech, and language were all within normal limits.  [*Id.*]  Dr. Paul also noted that Plaintiff's general thought process was logical, her abstract reasoning was intact, and her computation was within normal limits.  [*Id.*]  Dr. Paul observed that Plaintiff was euthymic, had a full range affect, was appropriate, and was mood-congruent.  [*Id.*]  He also observed that her attention and concentration were within normal limits and she was oriented to person, place, time, and purpose of interview.  [*Id.*]  Dr. Paul noted that her recent and remote memory were both intact, and her fund of knowledge was within normal limits.  [*Id.*]  Dr. Paul further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, suicidal ideation, intent, or plan, homicidal ideation, intent, or plan, and violent ideation, intent, or plan.  [*Id.*]  Dr. Paul observed

that Plaintiff's judgment, insight, and impulse control were all fair.  [*Id.*]

On March 26, 2018, Plaintiff had an appointment with Ms. Kowalski.  [R. 512.]  During the session Ms. Kowalski observed that Plaintiff was depressed and had a constricted affect, but that her appearance was adequately groomed and she was oriented to time, place, and person. [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also indicated that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff presented as in distress and worried about a date she had been on in the past week.  [*Id.*]

On April 2, 2018, Ms. Kowalski completed a treatment plan for Plaintiff.  [R. 503.]  In the plan, she noted that Plaintiff's vocational goal was to work on "expanding her business making custom patchwork clothing and accessories."  [*Id.*]  She also noted that within the past three months, Plaintiff reported that she wished she was dead or that she would go to sleep and never wake up.  [R. 510.]  On April 2, 2018, Plaintiff also had an appointment with Ms. Kowalski.  [R. 500.]  Ms. Kowalski observed that Plaintiff was depressed and anxious, but that she was adequately groomed, had a full range affect, and was oriented to time, place, and person. [*Id.*]  She further observed that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also indicated that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff was distressed about a recent date she went on where she felt deceived.  [*Id.*]

Plaintiff did not attend her sessions with Ms. Kowalski on April 9th and 16th because she was out of town on a business trip.  [R. 496, R. 498.]  Plaintiff did attend her appointment with Ms. Kowalski on April 23, 2018 though.  [R. 493.]  Ms. Kowalski observed that Plaintiff was

depressed and anxious, and angry, but that her appearance was adequately groomed, she had a full range affect, and she was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*]  Plaintiff also indicated that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff had just returned from a "two week trip from Florida where she was doing business selling her garments."  [*Id.*]  Ms. Kowalski observed that Plaintiff had a "minor positive affect when describing regular engagements in work and making some sales[.]" [*Id.*]

On April 30, 2018, Plaintiff had her weekly appointment with Ms. Kowalski.  [R. 490.] Ms. Kowalski observed that Plaintiff was depressed, anxious, and angry, and that her appearance was disheveled.  [*Id.*]  Ms. Kowalski also noted that Plaintiff had a full range affect and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also indicated that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff had an increase in symptom severity since the last appointment but that her level of functioning was stable.  [*Id.*]  Ms. Kowalski further noted that Plaintiff was distressed because she had found her mother secretly smoking in spite of her mother's multiple lung and heart complications.  [*Id.*] Ms. Kowalski noted that Plaintiff had a "somewhat inappropriate flat affect" as she recounted finding her mother smoking.  [*Id.*]

Shortly thereafter, on May 1, 2018, Plaintiff had another appointment with Ms. Kowalski. [R. 487.]  Ms. Kowalski noted that Plaintiff was depressed, anxious, and angry, and that her appearance was disheveled.  [*Id.*]  Ms. Kowalski also observed that Plaintiff had a full range

6

affect and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  At the session, Plaintiff indicated that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff was still processing her reaction to finding her mother smoking and that she felt isolated from her brother who was apathetic.  [*Id.*]  Ms. Kowalski also observed that Plaintiff was expansive and hyper, but also detached and continued to interrupt Ms. Kowalski. [*Id.*]  During the week of May 7th, Plaintiff cancelled both of her sessions with Ms. Kowalski because of her mother's recent eye surgery and because she caught her mother smoking.  [R. 483, R. 485.]

On May 15, 2018, Plaintiff attended her appointment with Ms. Kowalski.  [R. 480.]  Ms. Kowalski observed that Plaintiff was depressed and anxious, and that her appearance was disheveled.  [*Id.*]  Ms. Kowalski further observed that Plaintiff had a full range affect and was oriented to time, place, and person.  [*Id.*]  She also noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff indicated that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff reported significant stress from taking care of her mother and that she had been getting minimal sleep because of her workload and anxiety.  [*Id.*]

Shortly thereafter, on May 16, 2018, Plaintiff had another appointment with Ms. Kowalski.  [R. 477.]  After her last session, Plaintiff had requested a second session due to her difficulty functioning.  [R.480.]  During the session, Ms. Kowalski noted that Plaintiff was depressed and anxious, and that her appearance was disheveled.  [R. 477.]  Ms. Kowalski further noted that Plaintiff had a full range affect and was oriented to time, place, and person.  [*Id.*]  She

also stated that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*] Plaintiff indicated that she was adhering to her medication schedule. [*Id.*] Ms. Kowalski noted that Plaintiff reported that she was feeling overwhelmed by her work because her business was picking up. [*Id.*] Plaintiff further reported that she was struggling to function at home and that she was having difficulty finding time to sleep and eat regularly. [*Id.*]

On May 21, 2018, Plaintiff had her appointment with Ms. Kowalski. [R. 474.] Ms. Kowalski observed that Plaintiff was depressed and anxious, but that Plaintiff was nonetheless adequately groomed, had a full range affect, and was oriented to time, place, and person. [*Id.*] She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*] Plaintiff also stated that she was adhering to her medication schedule. [*Id.*] Ms. Kowalski noted that during their session, Plaintiff reported that she was preparing for an upcoming business trip and that she was excited about getting out of town. [*Id.*]

On May 28, 2018, Ms. Kowalski noted that Plaintiff had provided her notice that she would be out of town on a business trip and would resume sessions the following week. [R. 472.] On June 4, 2018, Ms. Kowalski noted that Plaintiff had left her a voicemail after she had called Plaintiff to let her know they had a session. [R. 470.] Plaintiff reported that she would still be out of town and Ms. Kowalski noted that they would resume sessions the following week. [*Id.*]

After her trip, Plaintiff had her appointment with Ms. Kowalski on June 12, 2018. [R. 467.] Ms. Kowalski observed that Plaintiff was anxious, adequately groomed, had a constricted but appropriate affect, and was oriented to time, place, and person. [*Id.*] She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*] Plaintiff also reported that she was adhering to her medication schedule. [*Id.*] Ms.

8

Kowalski noted that during their session, Plaintiff stated that she had just returned from a two week business trip to Florida, that she had a significant increase in business accounts, and that her merchandise was selling well.  [*Id.*]  Ms. Kowalski also noted that Plaintiff denied a depressed mood but reported anxiety about getting her work done.  [*Id.*]

On June 13, 2018, Dr. Paul conducted an evaluation of Plaintiff.  [R. 464.]  Dr. Paul noted that Plaintiff's chief complaint was that she did not take Abilify because she had hair loss. [*Id.*]  Nonetheless, Plaintiff indicated that her hair loss could have come from thyroid hormone use and would try to use Abilify.  [*Id.*]  Dr. Paul also conducted a psychiatric examination of Plaintiff.  He noted that Plaintiff was adequately groomed, cooperative, and well-related.  [R. 464.]  He further noted that Plaintiff had normal psychomotor control, her eye contact was good, and her rate of speech, volume of speech, articulation of speech, coherence of speech, spontaneity of speech, and language were all within normal limits.  [*Id.*]  Dr. Paul further observed that Plaintiff's general thought process was logical, her abstract reasoning was intact, and her computation was within normal limits.  [*Id.*]  Dr. Paul noted that Plaintiff was euthymic, had a full range affect, was appropriate, and was mood-congruent.  [*Id.*]  He further noted that her attention and concentration were within normal limits and she was oriented to person, place, time, and purpose of interview.  [*Id.*]  Dr. Paul also noted that her recent and remote memory were both intact, and her fund of knowledge was in normal limits.  [*Id.*]  Dr. Paul noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, suicidal ideation, intent, or plan, homicidal ideation, intent, or plan, and violent ideation, intent, or plan.  [*Id.*]  Dr. Paul observed that Plaintiff's judgment, insight, and impulse control were all fair.  [*Id.*]

On June 20, 2018, Plaintiff had an appointment with Ms. Kowalski.  [R. 461.]  Ms.

Kowalski noted that Plaintiff was euthymic and anxious, and that she was adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]  She also noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*]  Plaintiff further reported that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff talked about improvements at work in terms of getting more clients, but also noted that Plaintiff was stressed about being able to timely produced her merchandise.  [*Id.*]

Plaintiff had her next appointment with Ms. Kowalski on June 25, 2018.  [R. 458.]  Ms. Kowalski noted that Plaintiff was anxious and irritable, but that she was nonetheless adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also reported adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session, Plaintiff appeared brighter and reported an increase in fulfillment and motivation at work.  [*Id.*]  On July 2, 2018, Ms. Kowalski noted that Plaintiff had contacted her in advance of their session to cancel because she would be out of town.  [R. 456.]

On July 11, 2018, Plaintiff attended her appointment with Ms. Kowalski.  [R. 451.]  Ms. Kowalski noted that Plaintiff was depressed, anxious, and fearful.  [*Id.*]  She also noted that Plaintiff was adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also reported complete adherence to her medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session, Plaintiff had just returned from a trip to Florida.  [*Id.*]  Ms. Kowalski observed that Plaintiff appeared well-rested

and euthymic, and that she denied a significant depressed mood.  [*Id.*]

On July 11, 2018, Ms. Kowalski also completed a treatment plan for Plaintiff.  [R. 447.]

In the plan, she noted that Plaintiff's vocational goal was to work on "expanding her business

making custom patchwork clothing and accessories."  [*Id.*]  In terms of Plaintiff's objectives,

Ms. Kowalski also noted that with respect to addressing Plaintiff's emotional issues, Plaintiff

had reported "difficulty functioning (eating a regular diet, sleeping through the night) in the past

quarter" because she had faced a lot of environmental triggers.  [*Id.*]

On July 16, 2018, Plaintiff cancelled her session with Ms. Kowalski because her

mother's childhood friend had killed herself.  [R. 444.]  Plaintiff reported that her mother was a

"mess" and that she needed to take care of her.  [*Id.*]  She rescheduled with Ms. Kowalski for the

following week.  [*Id.*]  On July 25, 2018, Plaintiff had her appointment with Ms. Kowalski.  [R.

441.]  Ms. Kowalski noted that Plaintiff was depressed, anxious, and fearful.  [*Id.*]  Nonetheless,

Ms. Kowalski also observed that Plaintiff was adequately groomed, had a full range of affect,

and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied

obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also

reported that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that

Plaintiff reported feeling an increase in pressure to be her mother's sole caretaker after her

mother lost her best childhood friend to suicide.  [*Id.*]  Plaintiff also showed Ms. Kowalski a text

message she sent to her brother, asking him for help with financial support.  [*Id.*]  Plaintiff

agreed when Ms. Kowalski asked if she felt uncomfortable asking others for help.  [*Id.*]

Plaintiff and Ms. Kowalski would have had an appointment on July 30, 2018, but

Plaintiff provided Ms. Kowalski with two weeks notice that she would be out of town and they

scheduled a phone session for later in the week.  [R. 439.]  However, on August 1, 2018,

Plaintiff failed to answer her phone for her scheduled phone session with Ms. Kowalski.  [R.

437.]  Ms. Kowalski noted that Plaintiff reported that she forgot about the call.  [*Id.*]

On August 8, 2018, Plaintiff had her appointment with Ms. Kowalski in person.  [R.

434.]  Ms. Kowalski noted that Plaintiff was depressed, but adequately groomed, had a full range

of affect, and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff

denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]

Plaintiff also reported that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski

noted that during their session, Plaintiff reported recent losses and financial stressors.  [*Id.*]  Ms.

Kowalski observed that Plaintiff appeared detached, spoke rapidly throughout the session, and

continued to talk over Ms. Kowalski.  [*Id.*]

On August 15, 2018, Plaintiff had her weekly appointment with Ms. Kowalski.  [R. 431.]

Ms. Kowalski noted that Plaintiff was depressed, anxious, and irritable, but that she was also

adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]

She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions,

and suicidal ideation.  [*Id.*]  Plaintiff also reported that she was in complete adherence with her

medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session, Plaintiff reported

work-related stressors and upcoming shows.  [*Id.*]  Ms. Kowalski further noted that when she

attempted to point out Plaintiff's patterns of black and white thinking, Plaintiff became

defensive.  [*Id.*]

Plaintiff had her next appointment with Ms. Kowalski on August 20, 2018.  [R. 428.]

Ms. Kowalski observed that Plaintiff was depressed, anxious, and irritable.  [*Id.*]  She also

12

observed that Plaintiff was unkempt, but nonetheless had a full range of affect and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also reported that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session, Plaintiff indicated that she was suspicious of her boyfriend and his intentions.  [*Id.*]

On September 3rd and 12th, Ms. Kowalski noted that Plaintiff missed her previously scheduled sessions.  [R. 423, *repeated at* R. 1002; R. 426, *repeated at* R. 1005.]  For the session on September 3rd, Ms. Kowalski noted that Plaintiff cancelled in advance and reported that it was the only day to do her taxes and that she would be leaving town in a couple of days.  [R. 426.]  Ms. Kowalski noted that Plaintiff missed the session on September 12th because she was running late from a doctor's appointment.  [R. 423.]

On September 19, 2018, Plaintiff attended her appointment with Ms. Kowalski.  [R. 417.]  Ms. Kowalski observed that Plaintiff was depressed, anxious, and irritable, but that she was nonetheless adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*]  Plaintiff also reported that she was complying with her medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session, she discussed Plaintiff's recent absences from the clinic and her guardedness about asking for help.  [*Id.*]

Plaintiff had her next appointment with Ms. Kowalski on September 26, 2018.  [R. 417.]  During that session, Ms. Kowalski observed that Plaintiff was depressed, anxious, and irritable, but that Plaintiff was also adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions,

hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also reported that she was

adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff expressed fear

regarding a voicemail from her boyfriend.  [*Id.*]

Plaintiff's next appointment with Ms. Kowalski was on October 3, 2018.  [R. 414.]  Ms.

Kowalski noted that Plaintiff was depressed, anxious, and irritable, but that she was nonetheless

adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]

She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions,

and suicidal ideation.  [*Id.*]  Plaintiff also reported that she was adhering to her medication

schedule.  [*Id.*]  Ms. Kowalski noted that during their session, Plaintiff discussed her recent

break up.  [*Id.*]  Plaintiff had her next weekly appointment with Ms. Kowalski on October 10,

2018.  [R. 411.]  Ms. Kowalski observed that Plaintiff was depressed, anxious, and irritable, but

also observed that Plaintiff was adequately groomed, had a full range of affect, and was oriented

to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions,

hallucinations, delusions, and suicidal ideation, and that Plaintiff reported complying with her

medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff discussed how she feared her

boyfriend's changeable attitude.  [*Id.*]  Plaintiff attended her weekly appointment with Ms.

Kowalski on October 17, 2018.  [R. 408.]  Ms. Kowalski noted that Plaintiff was depressed,

anxious, and irritable, but that Plaintiff was nonetheless adequately groomed, had a full range of

affect, and was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied

obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff

reported complete adherence to her medication schedule.  [*Id.*]  Ms. Kowalski noted that during

their session, Plaintiff discussed how she recently lost an important account and that she might

have to close her business.  [*Id.*]

Plaintiff cancelled her sessions with Ms. Kowalski on October 24th and 31st, because Plaintiff was out of town on a business trip.  [R. 402, *repeated at* R. 984; R. 405, *repeated at* R. 981.]  On November 2, 2018, Plaintiff had an appointment with Ms. Kowalski over the phone because Plaintiff was still out of town.  [R. 399.]  Ms. Kowalski noted that Plaintiff was depressed, anxious, irritable, and fearful, but that she was adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also reported adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff expressed concerns regarding her boyfriend and that she had lost two business opportunities.  [*Id.*]

On November 7, 2018, Ms. Kowalski noted that she had a phone call with Plaintiff.  [R. 396, *repeated at* R. 972.]  On that phone call, Ms. Kowalski discussed billing discrepancies in connection with a phone session and the clinic policy about regularly attending sessions because Plaintiff had left for a 2-3 week business trip.  [R. 396.]  Ms. Kowalski observed that Plaintiff became irritable and defensive over their conversation.  [*Id.*]  Later on the same day, Ms. Kowalski noted that Plaintiff had contacted her with a late notice cancellation of their scheduled session.  [R. 393, *repeated at* R. 975.]  Ms. Kowalski also noted that she confirmed that Plaintiff had failed to pay in advance of their previous phone session.  [R. 393.]

On November 15, 2018, Plaintiff attended her appointment with Ms. Kowalski in person. [R. 390.]  Ms. Kowalski observed that Plaintiff was depressed and anxious, but also relaxed. [*Id.*]  She also observed that Plaintiff was adequately groomed, had a full range of affect, and

was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported complete compliance with her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff discussed her recent trip to Florida and her request to transfer clinicians.  [*Id.*]  Ms. Kowalski noted that in response to Plaintiff's latter concern, they worked to re-establish her therapeutic goals and rapport.  [*Id.*]

Plaintiff had her next appointment with Ms. Kowalski on November 20, 2018.  [R. 387.] Ms. Kowalski noted that Plaintiff was depressed and anxious, but that Plaintiff was nonetheless adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*] She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported complete adherence to her medication schedule. [*Id.*]  Ms. Kowalski noted that during their session, they discussed Plaintiff's finances and vocational barriers.  [*Id.*]  Shortly thereafter, on November 21, 2018, Plaintiff had another appointment with Ms. Kowalski.  [R. 384.]  Ms. Kowalski observed that Plaintiff was depressed, anxious, and fearful, but that Plaintiff was also adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*] Plaintiff also reported complete compliance with her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff further discussed her recent trip to Florida and her fear of her ex-boyfriend.  [*Id.*]

Plaintiff had her next weekly appointment with Ms. Kowalski on November 28, 2018. [R. 381.]  Ms. Kowalski observed that Plaintiff was depressed, anxious, and fearful, but that she was also adequately groomed, had a full range of affect, and was oriented to time, place, and

person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported complete adherence to her medication schedule.  [*Id.*]  Ms. Kowalski observed that Plaintiff had an increase in symptom severity and a decreased level in functioning since her previous appointment.  [*Id.*]  She also noted that Plaintiff stated that she was scared and felt lost, and discussed how every man she dates reminds her of her father.  [*Id.*]

Plaintiff had her next appointment with Ms. Kowalski on December 7, 2018.  [R. 378.] Ms. Kowalski observed that Plaintiff was depressed, anxious, and fearful, but that she was also adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*] She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported complete compliance with her medication schedule. [*Id.*]  Ms. Kowalski noted that Plaintiff expressed persistent hopelessness and fear relating to career planning, and that Plaintiff would need to close her business in 2019.  [*Id.*]

Plaintiff and Ms. Kowalski next met on December 12, 2018.  [R. 375.]  Ms. Kowalski noted that Plaintiff was depressed, anxious, irritable, and fearful, but she also noted that Plaintiff was adequately groomed, had a full range of affect, and oriented to time, place, and person.  [*Id.*] She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff was adhering to her medication schedule.  [*Id.*] During their session, Ms. Kowalski noted that Plaintiff expressed frustration with taking care of her mother.  [*Id.*]  On December 19th, Ms. Kowalski made a note that Plaintiff cancelled her session in advance because she had a conflicting dental surgery appointment and on December 26th, Ms. Kowalski noted that the session was cancelled because she was on vacation.  [R. 369, *repeated*

*at* R. 948; R. 372, *repeated at* R. 951.]

On January 2, 2019, Plaintiff had her weekly session with Ms. Kowalski.  [R. 365.]  At this session, Ms. Kowalski also completed a progress note for Plaintiff.  [*Id.*]  During the session, Ms. Kowalski observed that Plaintiff was depressed, but was adequately groomed, had a full range of affect, and was oriented to time, place, and person.  [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also reported complying with her medication schedule.  [*Id.*]  Ms. Kowalski noted that Plaintiff remained persistently depressed with severe symptoms, such as "fatigue, anhedonia, low motivation, hopelessness, [and] difficulties sleeping[.]"  [*Id.*][3]  Ms. Kowalski further noted that Plaintiff discussed goals related to job searching.  [*Id.*]  As part of a questionnaire, Ms. Kowalski noted that for nearly every day for the past two weeks, Plaintiff reported little interest or pleasure in doing things, feeling down, depressed, or hopeless, trouble falling or staying asleep or sleeping too much, feeling tired or having little energy, poor appetite or overeating, and feeling bad about herself.  [*Id.*]  Ms. Kowalski also noted that Plaintiff denied trouble concentrating, moving or speaking slowly, moving or speaking restlessly, thoughts that she would be better off dead, and thoughts regarding harming herself.  [*Id.*]

On January 3, 2019, Dr. Paul conducted an evaluation of Plaintiff.  [R. 362.]  Dr. Paul noted that Plaintiff was stable and that she reported she was sleeping better.  [*Id.*]  As part of his evaluation, Dr. Paul also conducted a psychiatric examination of Plaintiff.  He noted that Plaintiff was adequately groomed, cooperative, and well-related.  [*Id.*]  He further noted that

---

[3] Ms. Kowalski noted that Plaintiff had severe "sx", which is the medical abbreviation for symptoms. *See Practical Guide to Clinical Medicine*, UC San Diego School of Medicine, meded.ucsd.edu/clinicalmed/abbreviation.html (last visited December 14, 2022).

Plaintiff had normal psychomotor control, her eye contact was good, and her rate of speech, volume of speech, articulation of speech, coherence of speech, spontaneity of speech, and language were all within normal limits.  [*Id.*]  Dr. Paul observed that Plaintiff's general thought process was logical, her abstract reasoning was intact, and her computation was within normal limits.  [*Id.*]  Dr. Paul also observed that Plaintiff was euthymic, appropriate, mood-congruent, and had a full range affect.  [*Id.*]  He further observed that her attention and concentration were within normal limits and she was oriented to person, place, time, and purpose of interview.  [*Id.*]  Dr. Paul noted that her recent and remote memory were both intact, and her fund of knowledge was in normal limits.  [*Id.*]  Dr. Paul also noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, suicidal ideation, intent, or plan, homicidal ideation, intent, or plan, and violent ideation, intent, or plan.  [*Id.*]  Dr. Paul finally noted that Plaintiff's judgment, insight, and impulse control were all fair.  [*Id.*]

On January 9, 2019, Ms. Kowalski completed a treatment plan for Plaintiff.  [R. 358.]  In the plan, she noted that Plaintiff's vocational goal was to work on "expanding her business making custom patchwork clothing and accessories."  [*Id.*]  Plaintiff also had an appointment with Ms. Kowalski on January 9, 2019.  [R. 352.]  Ms. Kowalski observed that Plaintiff was depressed, but was nonetheless adequately groomed, oriented to time, place, and person, and had a full range affect.  [*Id.*]  She further observed that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also indicated that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session, Plaintiff reported significant feelings of hopelessness and fear.  [*Id.*]

19

On January 16, 2019, Plaintiff had her weekly appointment with Ms. Kowalski.  [R. 349.] Ms. Kowalski observed that Plaintiff was depressed, anxious, and had a constricted affect.  [*Id.*] She also observed that Plaintiff was adequately groomed and oriented to time, place, and person. [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff  indicated that she was complying with her medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session, Plaintiff reported difficulty sleeping, eating, and engaging in activities of daily living because it was the anniversary of the last time she saw her father alive.  [*Id.*][4]

Plaintiff had another appointment with Ms. Kowalski on January 17, 2019.  [R. 346.] Ms. Kowalski observed that Plaintiff was depressed, anxious, and fearful, but that Plaintiff was adequately groomed, oriented to time, place, and person, and had a full range affect.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  She further noted that Plaintiff  indicated that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session, Plaintiff discussed past romantic relationships and her history with dishonest partners.  [*Id.*]

Plaintiff had her next appointment with Ms. Kowalski on January 23, 2019.  [R. 343.] Ms. Kowalski noted that Plaintiff was depressed, anxious, and fearful, but that she was nonetheless adequately groomed, oriented to time, place, and person, and had a full range affect. [*Id.*]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations,

---

[4] Ms. Kowalski noted that Plaintiff had difficulty with "ADLs", which is the medical abbreviation for activities of daily living. *See Practical Guide to Clinical Medicine*, UC San Diego School of Medicine, meded.ucsd.edu/clinicalmed/abbreviation.html (last visited December 14, 2022).

delusions, and suicidal ideation.  [*Id.*]  She also noted that Plaintiff reported that she was

adhering to her medication schedule.  [*Id.*]  Ms. Kowalski observed that during their session,

Plaintiff reported that she was anxious and fearful about career searching and her general

functioning, but that she was apathetic about taking steps to find employment.  [*Id.*]

On February 6, 2019, Plaintiff had her weekly appointment with Ms. Kowalski.  [R. 340.]

Ms. Kowalski noted that Plaintiff was depressed and irritable, butt that she was adequately

groomed, oriented to time, place, and person, and had a full range affect.  [*Id.*]  She also noted

that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation,

and that Plaintiff reported that she was complying with her medication schedule.  [*Id.*]  Ms.

Kowalski noted that Plaintiff reported no change in her depressed mood and seemed defensive

towards her.  [*Id.*]

Plaintiff had her next appointment with Ms. Kowalski on February 13, 2019.  [R. 337.]

At that appointment, Ms. Kowalski observed that Plaintiff was depressed and anxious, and had a

constricted affect.  [*Id.*]  She otherwise observed that Plaintiff  was adequately groomed and

oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and

compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  She also noted that Plaintiff

indicated that she was complying with her medication schedule.  [*Id.*]  During their session, Ms.

Kowalski noted that Plaintiff continued to present with severe symptoms of depression, such as

"anhedonia, fatigue, difficulty falling and staying asleep, [and] hopelessness[.]"  [*Id.*]  She also

observed that Plaintiff was malodorous and reported a relational conflict with her business.  [*Id.*]

She noted that Plaintiff reported feeling angry with co-workers who questioned her.  [*Id.*]

On February 21, 2019, Plaintiff had her next appointment with Ms. Kowalski.  [R. 334.]
Ms. Kowalski observed that Plaintiff was depressed, anxious, and irritable, but was adequately
groomed, oriented to time, place, and person, and had a full range affect.  [*Id.*]  She noted that
Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.
[*Id.*]  She also noted that Plaintiff indicated that she was complying with her medication
schedule.  [*Id.*]  During their session, Ms. Kowalski noted that Plaintiff presented as increasingly
depressed, fatigued, and was somewhat malodorous.  [*Id.*]  She noted that Plaintiff reported
getting sleep only three nights the past week, but otherwise had insomnia.  [*Id.*]

On February 27, 2019, Plaintiff had her next weekly appointment with Ms. Kowalski.
[R. 331.]  Ms. Kowalski observed that Plaintiff was unkempt, malodorous, depressed, fearful,
and had a blunted affect.  [*Id.*]  She also observed that Plaintiff was oriented to time, place, and
person, and denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.
[*Id.*]  She noted that Plaintiff reported that she was adhering to her medication schedule.  [*Id.*]
Ms. Kowalski also observed that Plaintiff had an increase in her symptom severity and a
decrease level in functioning since her last appointment.  [*Id.*] During their session, Ms.
Kowalski noted that Plaintiff reported an increased sense of hopelessness and stated that she felt
as if she was "paralyzed" and "not part of the human race."  [*Id.*]

The following day, February 28, 2019, Plaintiff had an appointment with Dr. Paul.  [R.
328.]  Dr. Paul noted that Plaintiff had a rash and increased her prescription for trazodone.  [*Id.*]
Dr. Paul also conducted a psychiatric examination of Plaintiff.  As part of his examination, Dr.
Paul noted that Plaintiff was adequately groomed, cooperative, and well-related.  [*Id.*]  He
further noted that Plaintiff had normal psychomotor control, her eye contact was good, and her

rate of speech, volume of speech, articulation of speech, coherence of speech, spontaneity of speech, and language were all within normal limits.  [*Id.*]  Dr. Paul observed that Plaintiff's general thought process was logical, her abstract reasoning was intact, and her computation was within normal limits.  [*Id.*]  Dr. Paul also observed that Plaintiff was euthymic, appropriate, mood-congruent, and had a full range affect.  [*Id.*]  He further observed that her attention and concentration were within normal limits and she was oriented to person, place, time, and purpose of interview.  [*Id.*]  Dr. Paul also noted that her recent and remote memory were both intact, and her fund of knowledge was in normal limits.  [*Id.*]  Dr. Paul noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, suicidal ideation, intent, or plan, homicidal ideation, intent, or plan, and violent ideation, intent, or plan.  [*Id.*]  Dr. Paul further noted that Plaintiff's judgment, insight, and impulse control were all fair.  [*Id.*]

On March 13, 2019, Ms. Kowalski noted that Plaintiff cancelled their session because Plaintiff's mother was removed from life support the day prior.  [R. 874.]  The following week, on March 22nd, Ms. Kowalski contacted Plaintiff to follow up and schedule her next session.  [R. 873.]  On March 26, 2019, Dr. Paul conducted another evaluation of Plaintiff.  [R. 866.]  Dr. Paul noted that Plaintiff's mother had passed away.  [*Id.*]  Dr. Paul also conducted a psychiatric examination of Plaintiff.  Dr. Paul observed that Plaintiff was adequately groomed, cooperative, and well-related.  [R. 867.]  He further observed that Plaintiff had normal psychomotor control, her eye contact was good, and her rate of speech, volume of speech, articulation of speech, coherence of speech, spontaneity of speech, and language were all within normal limits.  [*Id.*]  Dr. Paul noted that Plaintiff's general thought process was logical, her abstract reasoning was intact, and her computation was within normal limits.  [R. 868.]  Dr. Paul also noted that

Plaintiff's mood was euthymic, and her affect was appropriate, mood-congruent, and had a full range.  [*Id.*]  He further observed that her attention and concentration were within normal limits and she was oriented to person, place, time, and purpose of interview.  [*Id.*]  Dr. Paul also noted that her recent and remote memory were both intact, and her fund of knowledge was in normal limits.  [*Id.*]  Dr. Paul noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, suicidal ideation, intent, or plan, homicidal ideation, intent, or plan, and violent ideation, intent, or plan.  [*Id.*]  Dr. Paul finally noted that Plaintiff's judgment, insight, and impulse control were all fair. [R. 869.]

Also on March 26, 2019, Plaintiff had a session with Ms. Kowalski.  [R. 863.]  Ms. Kowalski observed that Plaintiff was depressed, anxious, and fearful, but was adequately groomed, oriented to time, place, and person, and had a full range affect.  [R. 864.]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*]  She also noted that Plaintiff reported that she was complying with her medication schedule. [*Id.*]  During their session, Ms. Kowalski noted that Plaintiff was grieving the loss of her mother and was fearful, but future oriented.  [R. 865.]  On April 3, 2019, Ms. Kowalski noted that Plaintiff cancelled their session because she would be out of town with family.  [R. 862.]

Plaintiff had her next session with Ms. Kowalski on April 10, 2019.  [R. 859.]  At that session, Ms. Kowalski noted that Plaintiff was depressed, anxious, fearful, and that her appearance was disheveled, but that she was oriented to time, place, and person and had a full range affect.  [R. 860.]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported that she was adhering

to her medication schedule.  [*Id.*]  During their session, Ms. Kowalski observed that Plaintiff presented as anxious and "racing[.]"  [R. 861.]

On April 15, 2019 Plaintiff had another session with Ms. Kowalski.  [R. 856.]  Ms. Kowalski observed that Plaintiff was depressed, anxious, fearful, and disheveled, but was oriented to time, place, and person and had a full range affect.  [R. 857.]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  She further noted that Plaintiff reported that she was adhering to her medication schedule.  [*Id.*]  Ms. Kowalski noted that during their session Plaintiff presented as depressed and fearful, and observed that she cried throughout the session.  [R. 858.]  She further noted that Plaintiff reported continued difficulty sleeping.  [*Id.*]

Plaintiff had her next session with Ms. Kowalski on April 22, 2019. [R. 853.] Ms. Kowalski observed that Plaintiff appeared disheveled, and was depressed, anxious, and fearful. [R. 854.]  Nonetheless, she noted that Plaintiff had a full range affect and was oriented to time, place, and person.  [*Id.*]  She also noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported that she was adhering to her medication schedule.  [*Id.*]  During their session, Ms. Kowalski observed that Plaintiff was at times blunted in affect but at other times had a full range and was somewhat expansive.  [R. 855.]  Ms. Kowalski also noted that Plaintiff reported a lack of sleep and continued difficulty engaging in activities of daily living.  [*Id.*]

On May 8, 2019, Plaintiff had her weekly session with Ms. Kowalski.  [R. 849.]  Ms. Kowalski observed that Plaintiff was depressed, anxious, and fearful, but was nonetheless adequately groomed and oriented to time, place, and person.  [R. 850.]  Ms. Kowalski also noted

25

that Plaintiff's affect was appropriate, mood congruent, and had a full range.  [*Id.*]  Plaintiff

denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and reported

compliance with her medication schedule.  [*Id.*]  During their session, Ms. Kowalski noted that

Plaintiff appeared to fluctuate between depressed and blunted to full range.  [R. 851.] On May

15, 2019, Ms. Kowalski noted that Plaintiff had cancelled their session because she was staying

with family in Florida.  [R. 848.]

On May 23, 2019, Plaintiff attended her weekly appointment with Ms. Kowalski.  [R.

833.]  Ms. Kowalski observed that Plaintiff was depressed, anxious, and fearful, but was

adequately groomed and oriented to time, place, and person.  [R. 834.]  She also observed that

Plaintiff's affect was appropriate, mood-congruent, and full range.  [*Id.*]  She noted that Plaintiff

denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  She

further noted that Plaintiff reported that she was adhering to her medication schedule.  [*Id.*]  Ms.

Kowalski noted that during their session, Plaintiff was tearful and anxious and reported

frustration with an aunt.  [R. 835.]  Later, on May 29, 2019, Ms. Kowalski noted that Plaintiff

cancelled their session because she was out of town visiting her family.  [R. 846.]

On June 5, 2019, Plaintiff attended her appointment with Ms. Kowalski.  [R. 830.]  Ms.

Kowalski observed that Plaintiff appeared disheveled, and was depressed, anxious, and fearful.

[R. 831.]  Nonetheless, she noted that Plaintiff's affect was appropriate, mood-congruent, and

full range, and that she was oriented to time, place, and person.  [*Id.*]  She also noted that

Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and

that Plaintiff reported that she was adhering to her medication schedule.  [*Id.*]  During their

session, Ms. Kowalski noted that Plaintiff reported ongoing difficulty sleeping and engaging in

activities of daily living since her mother's death.  [R. 832.]  The following week, on June 12,

2019, Ms. Kowalski noted that Plaintiff cancelled her session the morning of the session due to a

conflict with preparing her late mother's home for sale.  [R. 847.]

Plaintiff attended her next session with Ms. Kowalski on June 17, 2019.  [R. 843.]  Ms.

Kowalski observed that Plaintiff was depressed, anxious, and fearful, but was adequately

groomed and oriented to time, place, and person.  [R. 844.]  She also observed that Plaintiff's

affect was appropriate, mood-congruent, and full range.  [*Id.*]  She noted that Plaintiff denied

obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  She further

noted that Plaintiff reported that she was complying with her medication schedule.  [*Id.*]  Ms.

Kowalski noted that during their session, Plaintiff was tearful and reported frustration with her

medications.  [R. 845.]  Plaintiff reported that she had tried a Valium from a friend and that it

helped her feel better.  [*Id.*]  Ms. Kowalski also noted that Plaintiff asked her whether she could

be hospitalized because she reported difficulty functioning and engaging in activities of daily

living.  [*Id.*]

On June 18, 2019, Dr. Paul conducted an evaluation of Plaintiff.  [R. 836.]  Dr. Paul

noted that Plaintiff reported "lots of crying", "agitation" and that she felt lonely.  [*Id.*]  Dr. Paul

also noted that he would switch her to Valium.  [*Id.*]  Dr. Paul conducted a psychiatric

examination of Plaintiff, and observed that Plaintiff was adequately groomed, cooperative, and

well-related.  [R. 837.]  He further observed that Plaintiff had normal psychomotor control, her

eye contact was good, and her rate of speech, volume of speech, articulation of speech,

coherence of speech, spontaneity of speech, and language were all within normal limits.  [*Id.*]

Dr. Paul noted that Plaintiff's general thought process was logical, her abstract reasoning was

intact, and her computation was within normal limits.  [R. 838.]  Dr. Paul also noted that

Plaintiff's mood was euthymic, and her affect was appropriate, mood-congruent, and had a full

range.  [*Id.*]  He further observed that her attention and concentration were within normal limits

and she was oriented to person, place, time, and purpose of interview.  [*Id.*]  Dr. Paul also noted

that her recent and remote memory were both intact, and her fund of knowledge was in normal

limits.  [*Id.*]  Dr. Paul further noted that Plaintiff denied obsessions and compulsions,

hallucinations, delusions, suicidal ideation, intent, or plan, homicidal ideation, intent, or plan,

and violent ideation, intent, or plan.  [*Id.*]  Finally, Dr. Paul noted that Plaintiff's judgment,

insight, and impulse control were all fair.  [R. 839.]

On June 26, 2019, Ms. Kowalski noted that Plaintiff contacted her that morning to cancel

their session because her brother had surprised her by arriving in Long Island.  [R. 829.]

Plaintiff attended her appointment with Ms. Kowalski on July 2, 2019.  [R. 826.]  At that session,

Ms. Kowalski observed that Plaintiff appeared euthymic, depressed, anxious, and adequately

groomed.  [R. 827.]  She further observed that Plaintiff's affect was appropriate, mood-

congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [*Id.*]

She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and

suicidal ideation.  [*Id.*]  She also noted that Plaintiff reported that she was adhering to her

medication schedule.  [*Id.*]  During their session, Ms. Kowalski noted that Plaintiff was anxious

and fearful because her brother had found his birth family.  [R. 828.]

On July 9, 2019, Plaintiff had another appointment with Ms. Kowalski.  [R. 822.]  Ms.

Kowalski noted that Plaintiff appeared euthymic, depressed, anxious, and disheveled.  [R. 823.]

She further noted that Plaintiff's affect was appropriate and mood-congruent, but was

nonetheless constricted.  [*Id.*]  Plaintiff was oriented to time, place, and person, and she denied

obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Ms.

Kowalski noted that Plaintiff was still distressed regarding her brother's birth family.  [R. 824.]

Plaintiff had her next appointment with Ms. Kowalski on July 24, 2019.  [R. 819.]  Ms. Kowalski

again observed that Plaintiff appeared depressed, anxious, and disheveled.  [R. 820.]  She also

observed that Plaintiff's affect was appropriate and mood-congruent, but was nonetheless

constricted.  [*Id.*]  She noted that Plaintiff was oriented to time, place, and person, and that she

denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Ms.

Kowalski also noted that Plaintiff reported ongoing difficulty sleeping and maintaining activities

of daily living.  [R. 821.]  On July 31, 2019, Ms. Kowalski noted that she cancelled her

appointment with Plaintiff because she was out of town.  [R. 818.]  Plaintiff cancelled their next

session on August 7th because she was preparing her mother's house for the closing.  [R. 817.]

     Plaintiff attended her session with Ms. Kowalski on August 15, 2019.  [R. 814.]  Ms.

Kowalski noted that Plaintiff appeared depressed, anxious, and fearful, but that she was also

adequately groomed.  [R. 815.]  She further noted that Plaintiff's affect was appropriate, mood-

congruent, and had a full range, and that she was oriented to time, place, and person.  [*Id.*]

Plaintiff denied obsessions and compulsions, hallucinations, and delusions.  [*Id.*]  Ms. Kowalski

noted at this session that Plaintiff reported suicidal ideation.  [*Id.*]  Ms. Kowalski observed that

Plaintiff presented as tearful and fearful, and noted that Plaintiff's thoughts of suicidal ideation

occurred the prior week.  [R. 816.][5]  Plaintiff denied any reoccurrence of suicidal ideation and denied intent or plans to hurt herself.  [*Id.*]

Plaintiff had her next session with Ms. Kowalski on August 21, 2019.  [R. 811.]  Ms. Kowalski observed that Plaintiff appeared anxious, but adequately groomed.  [R. 812.]  She also observed that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  During the session, Ms. Kowalski observed that Plaintiff presented with a changeable affect in the sessions and was at times labile and crying but was oriented with good eye contact at other times.  [R. 813.]  Ms. Kowalski noted that Plaintiff reported difficulty in maintaining her activities of daily living.  [*Id.*]  Plaintiff's next appointment with Ms. Kowalski was on August 26, 2019.  [R. 807.]  Ms. Kowalski noted that Plaintiff appeared depressed, anxious, and fearful, but that she was nonetheless adequately groomed.  [R. 808.]  She further noted that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [*Id.*]  Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Ms. Kowalski noted that during their session, they discussed Plaintiff finding a new therapist because Ms. Kowalski was leaving the clinic.  [R. 809.]  Plaintiff denied suicidal ideation, but Ms. Kowalski observed that Plaintiff was significantly fearful and repetitively inquired about the need for a "different level of care."  [*Id.*]

---

[5] Ms. Kowalski noted that Plaintiff reported "SI", which is the medical abbreviation for suicidal ideation. *See Practical Guide to Clinical Medicine*, UC San Diego School of Medicine, meded.ucsd.edu/clinicalmed/abbreviation.html (last visited December 14, 2022).

On August 28, 2019, Plaintiff had another session with Ms. Kowalski.  [R. 804.]  Ms. Kowalski observed that Plaintiff appeared depressed and anxious, but was adequately groomed. [R. 805.]  She also observed that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*]  During the session, Ms. Kowalski noted that Plaintiff denied suicidal ideation but reported feeling unsafe and worried.  [R. 806.]  Ms. Kowalski further noted that Plaintiff believed she would benefit from 24-hour support while transitioning back to living by herself in New York City.  [*Id.*]  Plaintiff had her next appointment with Ms. Kowalski on September 4, 2019.  [R. 801.]  Ms. Kowalski noted that Plaintiff appeared depressed, fearful, and anxious, but was also adequately groomed.  [*Id.*]  She further noted that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [*Id.*] Plaintiff denied any obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*]  Ms. Kowalski noted that during their session, she assisted Plaintiff in filling out referral forms for Crisis Respite, which Plaintiff had expressed interest in attending.  [R. 803.]

Plaintiff had her final session with Ms. Kowalski on September 11, 2019.  [R. 798.]  Ms. Kowalski noted that Plaintiff appeared depressed and anxious, but that she was appropriately groomed.  [*Id.*]  She further noted that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that she was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation. [*Id.*]  During the session, Ms. Kowalski noted that Plaintiff appeared increasingly stable and organized.  [R. 800.]

31

Plaintiff's next session was with Social Worker Megan Larigan on September 24, 2019. [R. 795.]  Ms. Larigan observed that Plaintiff appeared depressed and anxious, but also observed that she was adequately groomed.  [R. 796.]  She further noted that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that she was oriented to time, place, and person.  [*Id.*]  She also noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported that she was adhering to her medication schedule.  [*Id.*]  During their session, Ms. Larigan noted that Plaintiff was anxious and visibly shaking at times, and cried periodically throughout their session.  [R. 797.] Ms. Larigan also noted that Plaintiff had an appointment at Crisis Respite and would follow-up with Ms. Larigan after her appointment.  [*Id.*]

Plaintiff had her next session with Ms. Larigan on September 26, 2019.  [R. 792.]  Ms. Larigan observed that Plaintiff appeared depressed, but was adequately groomed.  [R. 793.]  She further observed that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and thatPlaintiff was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported that she was adhering to her medication schedule.  [*Id.*]  In their session, Ms. Larigan noted that Plaintiff was tearful throughout their session and that Plaintiff had decided not to go to Crisis Respite.  [R. 794.]  Plaintiff's next session with Ms. Larigan was on October 1, 2019.  [R. 788.]  Ms. Larigan noted that Plaintiff appeared depressed, but was also adequately groomed. [R. 789.]  She further noted that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and

that Plaintiff reported that she was complying with her medication schedule.  [*Id.*]  Ms. Larigan also noted that Plaintiff was depressed and cried throughout their session.  [R. 790.]  On October 4, 2019, Ms. Larigan noted that Plaintiff gave advanced notice that she was cancelling the appointment due to travel.  [R. 782.]  She also noted that Plaintiff expressed concern because she was having difficulty sleeping.  [*Id.*]

Plaintiff attended her next appointment with Ms. Larigan on October 8, 2019.  [R. 779.] Ms. Larigan observed that Plaintiff appeared depressed, but was adequately groomed.  [R. 780.] She further observed that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported that she was complying with her medication schedule.  [*Id.*]  During their session, Ms. Larigan noted that Plaintiff cried intermittently throughout their session and that Plaintiff continued to process her mother's death.  [R. 781.]  Plaintiff had her next appointment with Ms. Larigan on October 15, 2019.  [R. 769.]  Ms. Larigan noted that Plaintiff appeared depressed, but was also adequately groomed.  [R. 770.]  She also noted that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that she was oriented to time, place, and person.  [*Id.*]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported that she was adhering to her medication schedule.  [*Id.*]  Ms. Larigan also noted that during their session, Plaintiff cried throughout their session and that although Plaintiff denied thoughts of harming herself, she stated that she does have thoughts about wanting to go to sleep and not wake up.  [R. 771.]

Plaintiff had her next appointment with Ms. Larigan on November 5, 2019.  [R. 1906.]
Ms. Larigan observed that Plaintiff appeared depressed, but was adequately groomed.  [R. 1906-07.]  She further observed that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [R. 1907.]  She noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported that she was adhering to her medication schedule.  [*Id.*]  During their session, Ms. Larigan noted that Plaintiff cried throughout their session and that they discussed Plaintiff's issues with her medication.  [R. 1908.]  Plaintiff reported that she had difficulty with mood regulation, nausea, sleep difficulties, and weight gain.  [*Id.*]  On November 12, 2019, Plaintiff had another session with Ms. Larigan. [R. 1903.]  Ms. Larigan noted that Plaintiff appeared depressed, but was adequately groomed.  [R. 1903-04.]  She also noted that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [R. 1904.]  She further noted that Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and that Plaintiff reported that she was complying with her medication schedule.  [*Id.*]  Ms. Larigan observed that Plaintiff cried intermittently throughout their session and that she expressed concern regarding her difficulties sleeping and challenges with her attention and concentration.  [R. 1905.]

Ms. Larigan and Plaintiff next met for Plaintiff's weekly session on November 19, 2019.
[R. 1899.]  Ms. Larigan observed that Plaintiff was depressed and angry, but was nonetheless adequately groomed.  [R. 1899-00.]  She further observed that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.
[R. 1900.]  Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal

ideation, and reported that she was complying with her medication schedule.  [*Id.*]  Ms. Larigan observed that during the session, Plaintiff appeared depressed and angry, and was tearful throughout the session.  [R. 1901.]  Plaintiff further reported sadness and helplessness regarding her attempts to address her difficulties sleeping.  [*Id.*]  At their next session on November 26, 2019, Ms. Larigan again observed that Plaintiff appeared depressed but adequately groomed.  [R. 1896.]  She also again noted that Plaintiff's affect was appropriate, mood-congruent, and had a full range.  [R. 1897.]  Plaintiff was oriented to time, place, and person, and she denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation.  [*Id.*]  Plaintiff also reported that she was complying with her medication schedule.  [*Id.*]  During their session, Ms. Larigan noted that Plaintiff reported better sleep and a positive impact on her mood as a result of the better sleep.  [R. 1898.]

Plaintiff and Ms. Larigan next met on December 3, 2019.  [R. 1893.]  Ms. Larigan noted that Plaintiff appeared depressed but adequately groomed.  [R. 1893-94.]  She also observed that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [R. 1894.]  Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and reported compliance with her medication schedule.  [*Id.*]  Ms. Larigan noted that Plaintiff became tearful intermittently throughout their session.  [R. 1895.]  Plaintiff had her next session with Ms. Larigan on December 13, 2019.  [R. 1890.]  Ms. Larigan observed that Plaintiff again appeared depressed but adequately groomed. [R. 1890-91.]  She further observed that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person.  [R. 1891.]  Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and reported

compliance with her medication schedule.  [*Id.*]  Ms. Larigan noted that Plaintiff cried throughout their session and that they discussed boundary setting in relationships.  [R. 1892.]

Ms. Larigan and Plaintiff had their following session on December 19, 219.  [R. 1887.] Similar to previous sessions, Ms. Larigan observed that Plaintiff appeared depressed but adequately groomed.  [R. 1887-88.]  She further observed that Plaintiff's affect was appropriate, mood-congruent, and had a full range, and that Plaintiff was oriented to time, place, and person. [R. 1888.]  Plaintiff denied obsessions and compulsions, hallucinations, delusions, and suicidal ideation, and reported adherence to her medication schedule.  [*Id.*]  Ms. Larigan noted that Plaintiff cried intermittently throughout their session and that they discussed setting boundaries in relationships and processing grief.  [R. 1889.]

### 3.      After Plaintiff's Date of Last Insured, December 31, 2019

After her date of last insured, Plaintiff continued to attend therapy sessions at the Karen Horney Clinic.  [*See* R. 1656-886.]  On January 17, 2020 Dr. Paul completed a "Mental Medical Findings Summary" questionnaire.  [R. 885.]  Dr. Paul noted that Plaintiff's diagnosis was "Major Depressive Disorder, Recurrent episode, Severe" and that it prevented Plaintiff from doing full-time work.  [R. 880.]  Dr. Paul further identified the following as relevant objective clinical findings: appetite disturbance with change in weight; sleep disturbance; difficulty thinking or concentrating; diminished interest in almost all activities; appetite disturbance with weight change; decreased energy; feelings of guilt/worthlessness; distractability; depressed mood; restlessness; easily fatigued; and irritability.  [R. 880-81.]  Dr. Paul further opined that Plaintiff's functional limitations were impacted by her significant grief, her sleep difficulties, her

distractibility, her trouble concentrating, and her ability to engage consistently in activities of daily living.  [R. 881.]

In the questionnaire, Dr. Paul also opined on Plaintiff's mental work limitations.  With respect to Plaintiff's ability to understand, remember, and apply information, Dr. Paul identified Plaintiff as having between moderate and marked limitations in understanding and learning terms, instructions and procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else and ask/answer questions and provide explanations; recognizing a mistake and correcting it; and sequencing multi-step activities and using reason and judgment to make work-related decisions.  [R. 882.]  For these mental work activities, Dr. Paul also noted that Plaintiff would be able to perform such activities only 20% of the time.  [*Id.*]  In terms of Plaintiff's sustained concentration and persistence, Dr. Paul noted that Plaintiff had marked limitations in working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.  [R. 883.]  Dr. Paul also noted that Plaintiff would have a moderate to marked limitation on her ability to initiate and perform a task and her ability to change activities or work settings without being disruptive.  [*Id.*]  For these mental work activities, Dr. Paul noted that Plaintiff would be able to perform such activities only 20% of the time.  [*Id.*]  Dr. Paul also indicated that Plaintiff would not have any issues working close to or with others without interrupting or distracting them and that as a result, Plaintiff had no time constraints associated with that activity.  [*Id.*]  With respect to Plaintiff's interactions with others, Dr. Paul noted that Plaintiff had moderate limitations on her

ability to handle conflicts with others; respond to requests, suggestions, criticism, corrections, and challenges; and keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. [*Id.*] For these interactions, Plaintiff would be able to engage in them for only 20% of the time. [*Id.*] Dr. Paul also identified that Plaintiff would not have any issues or time constraints with respect to her ability to cooperate with others; ask for help when needed; state her own point of view; initiate or sustain conversation; and understand and respond to social cues. [*Id.*] In terms of Plaintiff's ability to adapt, Dr. Paul indicated that Plaintiff with have a marked limitation in her ability to manage her psychologically-based symptoms. [R. 884.] Dr. Paul also indicated that Plaintiff would have moderate to marked limitations on her ability to adapt to change and her ability to maintain personal hygiene and attire appropriate for a work setting, as well as moderate limitations on her ability to respond to demands and to set realistic goals and make plans independently of others. [*Id.*] For these mental work activities, Dr. Paul noted that Plaintiff would only be able to perform such activities 20% of the time. [*Id.*] Dr. Paul also indicated that Plaintiff would not have any issues or time constraints with respect to her ability to distinguish between acceptable and unacceptable work performance and be aware of normal hazards and take appropriate precautions. [*Id.*] Dr. Paul also opined that Plaintiff had a two year medically documented history of the disorder with mental health therapy that is ongoing and diminished the symptoms of Plaintiff's mental disorder, and that Plaintiff had marginal adjustment. [*Id.*] As part of the questionnaire, Dr. Paul also noted that Plaintiff could tolerate low work stress, and that she would likely miss work once or twice a month due to her medical impairments. [R. 885.] Dr. Paul further noted that Plaintiff would be off task more than 21% of the time due to her medical condition. [*Id.*]

On May 12, 2020, Dr. Paul sent a letter to Plaintiff's attorney.  [R. 886.]  Dr. Paul stated

that Plaintiff met the "Listing" criteria.  [*Id.*]  He elaborated that Plaintiff meets the criteria for a:

> Depressive disorder, characterized by the following: Depressed mood;
> Diminished interest in almost all activities; Appetite disturbance with change in
> weight; Sleep disturbance; Decreased energy; Feelings of Guilt or worthlessness;
> Difficulty concentrating or thinking with marked limitation in the following areas
> of mental functioning: Concentrate, persist, or maintain pace; Adapt or manage
> oneself.

[*Id.*]  Dr. Paul further noted that the "listing category" was "serious and persistent" and that

Plaintiff had been receiving mental health therapy and psychiatric services at Karen Horney

Clinic since 2014.  [*Id.*]  He continued on to opine that Plaintiff demonstrated a minimal capacity

to adapt to demands that are not already part of her life.  [*Id.*]

On September 29, 2020, Dr. Paul completed a Social Security medical questionnaire.  [R.

889.]  Dr. Paul identified Plaintiff's diagnosis as "Major Depressive Disorder, Recurrent episode,

Severe[.]"  [*Id.*]  He also identified her symptoms as little interest or pleasure doing things;

feeling down, depressed, or hopeless; trouble falling/staying asleep; sleeping too much; feeling

tired or having little energy; feeling bad about self; trouble concentrating nearly every day of the

week; poor appetite; and fidgety and restless several days in the week.  [*Id.*]  In terms of

Plaintiff's mental status, Dr. Paul noted that for her attitude, appearance, and behavior, Plaintiff

was adequately groomed, she had normal motor activity, she was cooperative and well-related,

and she made good eye contact.  [*Id.*]  Regarding plaintiff's speech, thought, and perception, Dr.

Paul noted that Plaintiff's speech, language, and thought process were all within normal limits,

her abstract reasoning was intact, and that Plaintiff denied obsessions or compulsions.  [*Id.*]  In

terms of Plaintiff's mood and affect, Dr. Paul noted that she was depressed, anxious, full range,

inappropriate, and mood-congruent.  [*Id.*]  He further stated that Plaintiff's attention and

concentration were fluctuating, she was oriented to person, place, time and purpose of interview, her memory was intact, and her judgment was fair.  [R. 888-89.]

Dr. Paul also provided a current functional assessment. [R. 890.] In terms of activities of daily living, Dr. Paul noted that Plaintiff had an inconsistent daily/weekly routine and that she reported sleeping most of the day three to four times a week, and being awake for 30 to 36 hours one or two days a week.  [*Id.*]  For at least two days a week, Plaintiff is in bed crying.  [*Id.*][6]  Dr. Paul further noted that Plaintiff bathes every other day and that she had difficulty maintaining bills/paperwork.  [*Id.*]  Dr. Paul also noted that Plaintiff grocery shops once a month and is able to take public transportation.  [*Id.*]  He further noted that Plaintiff occasionally spends time with her family and friends, and speaks with family and friends on the phone almost daily.  [*Id.*]  In terms of Plaintiff's ability to function in a work setting, Dr. Paul noted that Plaintiff would have anxiety about interacting with the public and that she had not worked under a direct supervisor in approximately three years.  [*Id.*]  He also stated that Plaintiff would need more independent/self-contained roles that are less social, as well as flexibility in her schedule.  [*Id.*]  Dr. Paul noted that Plaintiff had no limitations in understanding and memory.  [ *Id.*]  In terms of Plaintiff's ability for sustained concentration and persistence, Dr. Paul noted that Plaintiff would be limited because she would have difficulty in sustaining attention, especially with respect to emails, bills, and paperwork.  [*Id.*]  He further noted that she could not sit and read for extended periods, and that she had challenges with multi-tasking and maintaining a consistent schedule due to sleep difficulties.  [*Id.*]  Regarding Plaintiff's ability for social interaction, Dr. Paul stated that Plaintiff

_____

[6] The exact number of days that Plaintiff spends in bed crying is unknown because that part of the form is cut off.  However, because the word "day" is pluralized, the Court assumes it is at least two.

40

would be limited because she has anxiety about interacting with the public. [*Id.*] With respect to Plaintiff's ability to adapt, Dr. Paul also stated she would be limited because she has challenges responding appropriately to changes in her work environment, especially those related to emotional regulation and that she might be triggered regarding her grief over death of her parents particularly in a public setting. [R. 891.] Dr. Paul also identified Plaintiff's emotional regulation as another significant limitation. [*Id.*] Dr. Paul stated that Plaintiff reported feeling randomly triggered and unexpectedly bursts into tears when reminded of her parents deaths. [*Id.*] He further stated that Plaintiff experienced panic-like symptoms. [*Id.*]

On October 6, 2020, M. Juriga, Ph. D. determined that there was insufficient evidence to determine whether Plaintiff satisfied the 12.04 "B" criteria or "C" criteria. [R. 67.] Nonetheless, he concluded that the "objective medical evidence does not support a finding of disabled" and affirmed the prior judgment. [R. 68.]

On October 27, 2020, Dr. Paul wrote another letter to Plaintiff's attorney. [R. 892.] He stated that while Plaintiff was capable of handling low stress work, she would not be able to do such work for eight hours a day on a regular or consistent basis. [*Id.*] He further stated that significant sleep disturbances, impaired ability to sustain concentration, and unpredictability of emotion dysregulation prevented Plaintiff from maintaining such a schedule. [*Id.*]

## C.    Plaintiff's Hearing Testimony

At the hearing, Plaintiff testified that she was five feet and five inches and weight 185 pounds. [R. 19.] She further testified that she lived alone on the eighth floor in an apartment building. [*Id.*] She testified that she did not drive and would travel by walking. [*Id.*] Plaintiff reported that she last worked in 2018 as a part-time employee at a clothing store. [R. 20.] At the

41

clothing store, she folded clothing, worked the register, dealt with customers, and stocked the shelves.  [R. 21.]  She testified that after working in the clothing store, she tried to run a business making custom patchwork clothing, but had since stopped that work.  [*Id.*]  As part of running her business, Plaintiff would do trunk shows in a store in Florida and try to sell things that she had previously been unable to sell online.  [R. 21-22.]

With respect to her ability to handle mental tasks, Plaintiff testified that she does not sleep consistently, and that there are days when she cries uncontrollably.  [R. 23-24.]  She testified that she could not "take the pressure" and would not be able to get along with customers or her boss.  [R. 24.]  She testified that she did not have a set schedule because of her inconsistent sleep pattern.  [*Id.*]  She testified that she had memory problems and needed reminders to take her medicine and to pay her bills.  [*Id.*]  She further testified that she struggled with concentration and could stay on task for 15 to 20 minutes.  [*Id.*]  By way of example, she testified that she struggled to watch a movie and that she could not watch the news for more than 15 minutes.  [*Id.*]  She testified that she did not have any problems following instructions, but did struggle to remember assignments.  [*Id.*]

When discussing activities of daily living, Plaintiff indicated that they overwhelmed her. [R. 26.]  She testified that she could not go food shopping and that instead she would have a friend do it for her or she would have it delivered.  [*Id.*]  For meals, she either uses the groceries or orders in.  [R. 28.]  She stated that her medication is delivered to her by the pharmacy.  [*Id.*]  She testified that she would send out her laundry to be cleaned and that she would run the dishwasher to wash her dishes.  [R. 26; R. 28.]  She further testified that her bed is never made and that she can go two to three days without showering.  [R. 26.]  Plaintiff also testified that she

had problems falling asleep and that she would spend the whole night awake and then need to sleep the following day.  [R. 24; R. 27.]  She testified that two to three times per week she would need to sleep through the day.  [R. 27.]

Plaintiff testified that she generally does not leave her apartment.  [R. 29.]  She stated that she would leave her apartment to go to her medical appointments or to go out to dinner or lunch if a family member takes her out, but otherwise she would not leave her apartment.  [R. 29.]  Plaintiff testified that she typically spends her days crying and feeling sorry for herself.  [R. 30.]

**D.    Vocational Expert Hearing Testimony**

Vocational Expert Amy Leopold also testified at the hearing.  [R. 35.]  The ALJ provided Ms. Leopold with a hypothetical involving an individual with Plaintiff's same age, education, and work experience, with the limitation that she could only perform low stress jobs and could not perform assembly line-type work or work with production quotas.  [R. 37.]  The ALJ further limited the individual in the hypothetical to only have occasional social interactions with the public, co-workers, and supervisors.  [R. 37-38.]  Based on the hypothetical individual, Ms. Leopold stated that the individual could not perform Plaintiff's past work.  [R. 38.]  Ms. Leopold identified the positions of office helper, dining room attendant, and grocery bagger as positions that the hypothetical individual could perform.  [R. 39-40.]  The ALJ noted that the position of grocery bagger could possibly have more than occasional social interactions and asked for a fourth position for the hypothetical individual.  [R. 40.]  Ms. Leopold identified mail sorter as another position for the hypothetical individual.  [R. 42.]

The ALJ then asked Ms. Leopold if an individual with the same limitations as the

individual in the first hypothetical, but with the additional limitation of being off task for 10% of the time would be able to perform any jobs within the economy.  [R. 42-43.]  Ms. Leopold noted that the four positions previously identified would be appropriate for the person in the second hypothetical.  [R. 43.]  When the ALJ increased the amount of time the individual would need to be off task for to 20%, Ms. Leopold stated that there were no jobs that the individual could work.  [*Id.*]

When questioned by Plaintiff's counsel, Ms. Leopold indicated that the Dictionary of Occupational Titles ("DOT") was updated was in 1991.  [R. 47.]  She also indicated that O*NET could be used in conjunction with the DOT and that one of the reasons for using O*NET was because the DOT was "getting outdated and needed to be updated."  [R. 48.]

## E.     The ALJ's Decision

At the first step of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 28, 2018, Plaintiff's alleged onset date, through December 31, 2019, her date of last insured.  [R. 78.]  At the second step, the ALJ determined  that Plaintiff had the severe impairment of major depressive disorder.  [*Id.*]  At the third step, the ALJ found that through the date of last insured, Plaintiff's impairment did not meet or medically equal the severity of one of the listed impairments in the Adult Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 78-81.]

At step four, the ALJ concluded that through the date of last insured, Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> She is limited to work in a low stress job defined as having only occasional changes in the work setting, no assembly line work, and no work with strictly

enforced daily production quotas. Work must involve only occasional interaction
with public, co-workers, and supervisors.

[R. 81.]  To reach this conclusion, the ALJ considered "all symptoms and the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence

and other evidence " in accordance with 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p.

[*Id.*]  The ALJ also found that Plaintiff would be unable to perform any past relevant work.  [R.

85.]

At step five, in light of the Vocational Expert's testimony, the ALJ determined that

through the date last insured, Plaintiff could be a office helper (DOT code: 239.567-010), dining

room attendant (DOT code: 3116.677-010), or a mail sorter (DOT code: 209.687-026).  [R. 86.]

The ALJ thus concluded that Plaintiff was "not under a disability" as defined in the SSA.  [R.

87.]

## III.   LEGAL STANDARDS

### A.   Standard of Review

In reviewing a decision of the Commissioner, a district court may "enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

42 U.S.C. § 405(g).  "It is not the function of a reviewing court to decide de novo whether a

claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  Rather, the court's

review is limited to "determin[ing] whether there is substantial evidence supporting the

Commissioner's decision and whether the Commissioner applied the correct legal standard."

*Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The substantial evidence standard is even more deferential than the "clearly erroneous"

standard. *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (internal quotation marks omitted).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks omitted). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear in light of the record evidence, remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

**B.      Statutory Disability**

The SSA defines the term "disability" to mean the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, a person is eligible

for disability benefits under the SSA only if

> his physical or mental impairment or impairments are of such severity that he is
> not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

Social Security Regulations set forth a five-step sequential analysis for evaluating

whether a person is disabled under the SSA:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of impairments;
> (3) whether the impairment meets or equals the severity of the specified
> impairments in the Listing of Impairments;
> (4) based on a "residual functional capacity" assessment, whether the claimant
> can perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(I)-(v),

416.920(a)(4)(I)-(v)).  The claimant bears the burden of proof for the first four steps of the

process.  *See Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008).  If the claimant proves that his

impairment prevents him from performing his past work, the burden then shifts to the

Commissioner at the fifth and final step.  *See Brault*, 683 F.3d at 445.

## C.    Weighing the Medical Evidence

On January 18, 2017, the Commissioner published the "Revisions to Rules Regarding the

Evaluation of Medical Evidence," effective March 27, 2017.  82 Fed. Reg. 5844-01, 2017 WL

168819 (Jan. 17, 2017).  The Revisions altered certain longstanding rules for evaluating medical

opinion evidence for cases filed after March 27, 2017.  *Id*. at *5844.  "Under the new

regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling

weight."  *Prieto v. Comm'r Soc. Sec.*, 2021 WL 3475625, at *8 (S.D.N.Y. Aug. 6, 2021).

Instead, all medical opinions must be evaluated for their persuasiveness based on: (1)

supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the

medical source's specialization; and (5) other relevant factors.  20 C.F.R. §§ 404.1520c(a)-(c).

The ALJ must provide an explanation for the factors of supportability and consistency,

because these factors are the most important.  *See Byrd v. Kijakazi*, 2021 WL 5828021, at *15

(S.D.N.Y. Nov. 12, 2021), *report and recommendation adopted* 2021 WL 5827636 (S.D.N.Y.

Dec. 7, 2021).  As to supportability, "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical findings(s), the more persuasive the medical

opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  As

for consistency, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is

with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* at §

404.1520c(c)(2).

"An ALJ must not only consider supportability and consistency in evaluating medical

source opinions but also must explain the analysis of those factors in the decision."  *Prieto*, 2021

WL 3475626, at *9; *see* 20 C.F.R. § 404.1520c(b)(2).  Further, in most instances, an ALJ must

"consider, but need not explicitly discuss, them in determining the persuasiveness of the opinion

of a medical source."  *Byrd*, 2021 WL 5828021, at *16.  "If the ALJ finds two or more medical

opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how he or she considered those three remaining factors." *Id.* (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)).

## IV.   DISCUSSION

Plaintiff raises several arguments to challenge the Acting Commissioner's decision. First, Plaintiff argues that she meets Listing 12.04. Plaintiff next argues that, contrary to the ALJ's determination, she lacks the RFC to work. Plaintiff also argues that the ALJ improperly evaluated her statements. Plaintiff next argues that the Vocational Expert should have relied upon information provided by the O*NET to determine that Plaintiff could not do the work for the three occupations identified. Plaintiff further argues that the hypothetical the ALJ presented to the Vocational Expert was defective.

### A.   Plaintiff Does Not Meet Listing 12.04

Plaintiff argues that she meets the requirements for Listing 12.04. Plaintiff bears the burden in proving that she meets the Listing. *See Burgess*, 537 F.3d at 128. To satisfy this burden, Plaintiff must "meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 482 (S.D.N.Y. 2018) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Listing 12.04 is for depressive, bipolar and related disorders and it consists of three paragraphs, designated A, B, and C. To satisfy the requirements of Listing 12.04, Plaintiff must meet the requirements of either paragraphs A and B or paragraphs A and C. *See* 20 C.F.R. Pt. 404, Subpt.

P, App. 1.[7]

The paragraph B criteria will be satisfied if Plaintiff could show:

B. Extreme limitation of one, or marked limitation of two, of the following areas
of mental functioning (see 12.00F):
    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ determined that Plaintiff did not satisfy the

requirements of paragraph B.  To reach this conclusion, the ALJ walked through each area of

mental functioning and determined that Plaintiff had only mild or moderate limitations in each

area.

First, the ALJ considered Plaintiff's ability to understand, remember or apply information

and determined that Plaintiff had a mild limitation.  [R. 79.]  The ALJ considered Plaintiff's

testimony that she had no problems following instructions and that she used reminders to take

her medication and pay her bills.  [*Id.*]  The ALJ also considered Plaintiff's testimony and

treatment notes to observe that Plaintiff is college educated, able to handle a business selling

handmade clothing on Ebay and Etsy, able to handle her own finances, lives alone, compliant

with medication management, can shop by phone and computer, able to ask for help when

needed, goes to therapy regularly, and is able to maintain her household.  [*Id.*]  The ALJ also

observed that based on her treatment notes, her mental status examinations reflected that her

---

[7] The Acting Commissioner does not dispute that Plaintiff met the paragraph A
requirements and acknowledges that where—as here—an ALJ is silent as to whether a claimant
satisfies the requirements of a particular paragraph, the Court will assume that claimant satisfied
those requirements.  *See* dkt. 17 at 17 n.4 (citing *Reyes v. Comm'r Soc. Sec.*, 2022 WL 4482543,
at *6 (S.D.N.Y. Sept. 27, 2022)).

remote memory was intact and this was confirmed by her ability to remember adequate details about her past personal and medical history.  [*Id.*]  The ALJ further observed that the record reflected that Plaintiff had short-term and long-term memory function as well as the ability to follow through with medical advice and a prescribed treatment regimen.  [*Id.*]

The ALJ then proceeded to consider Plaintiff's ability to interact with others and concluded that Plaintiff had a moderate limitation.  [R. 79.]  The ALJ noted that Plaintiff testified that she does not socialize often, sometimes failing to leave her home for weeks at a time, and will not attend family events, go to the movies, or eat out alone.  [*Id.*]  She further noted that Plaintiff testified that she could not deal with customers or interact with people and that occasionally a friend will visit her.  [*Id.*]  The ALJ observed that on her functional report, Plaintiff noted that she lives alone, that she spends time with others by talking or interacting on the computer, and that she has problems getting along with others.  [*Id.*]  The ALJ observed that Plainitf's mental status examinations were usually in normal limits and stable, and that her demeanor was generally cooperative and engaged, she maintained appropriate eye contact, and had appropriate speech.  [*Id.*] The ALJ also observed that there was an instance in the treatment notes where Plaintiff became irritable and defensive with her therapist.  [*Id.*]  The ALJ further noted several instances where providers noted that Plaintiff was disheveled, unkempt, and malodorous.  [*Id.*]  The ALJ observed that Plaintiff reported relational conflicts with people connected with her business, but that Plaintiff nonetheless increased the number of business accounts after a trip to Florida and reported that her merchandise was selling well.  [R. 79-80.]

The ALJ next considered Plaintiff's ability to concentrate, persist, or maintain pace and concluded that the Plaintiff had a mild limitation.  [R. 80.]  In reaching this conclusion, the ALJ

considered Plaintiff's testimony, whereby she stated that she had trouble concentrating, could only stay on task for 15 to 20 minutes, could no longer watch movies because she could not concentrate, could not complete deadlines, feels overwhelmed when given a task, does not like change or learning new things, has inconsistent sleep patterns, and that her medication causes drowsiness, nausea, and dizziness. [*Id.*] The ALJ further considered Plaintiff's testimony and treatment notes to observe that Plaintiff is college educated, able to handle a business selling handmade clothing on Ebay and Etsy, able to handle her own finances, lives alone, compliant with medication management, can shop by phone and computer, able to ask for help when needed, goes to therapy regularly, and is able to maintain her household. [*Id.*] The ALJ observed that throughout Plaintiff's treatment notes, her thought process was coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia. [*Id.*] The ALJ further observed that Plaintiff was able to stay on task during her therapy sessions and maintain a conversational exchange wither her providers. [*Id.*] Finally, the ALJ noted that Plaintiff was not on any medication to improve concentration. [*Id.*]

The ALJ finally considered Plaintiff's ability to adapt or manage oneself, and determined that Plaintiff had a moderate limitation. [R. 80.] The ALJ noted that Plaintiff's overall presentation was adequate during her treatment sessions, but that the treatment notes also indicated instances where Plaintiff was disheveled, unkempt, or malodorous. [*Id.*] The ALJ nonetheless noted that Plaintiff is college educated, able to handle a business selling handmade clothing on Ebay and Etsy, able to handle her own finances, lives alone, compliant with medication management, can shop by phone and computer, able to ask for help when needed, goes to therapy regularly, and is able to maintain her household. [*Id.*] Because Plaintiff only

had mild or moderate limitations in these areas of mental functioning, the ALJ concluded that Plaintiff did not satisfy the requirements of paragraph B.  [*Id.*]

Plaintiff argues that the ALJ impermissibly rejected Dr. Paul's January 17, 2020 opinion in determining whether Plaintiff satisfied the requirements of paragraph B.  [Dkt. 15 at 7.]  In his opinion, Dr. Paul indicated that Plaintiff had moderate/marked limitations in her ability to understand, remember, or apply information, moderate/marked to marked limitations in her ability to sustain concentration and persistence, moderate limitations in her interactions with others, and moderate to marked limitations in her ability to adapt.  [R. 882-84.]  As discussed in more detail below, the ALJ provided adequate reasons to find Dr. Paul's opinion only partially persuasive.  Further, in deciding whether Plaintiff satisfied the paragraph B criteria, the ALJ explained his findings in great detail and considered Plaintiff's testimony and the treatment notes from her appointments with Dr. Paul and her therapist.  Accordingly, there was substantial evidence to establish that Plaintiff did not satisfy the paragraph B criteria.  *See Nocera v. Saul*, 2019 WL 3282942, at *8 (S.D.N.Y. July 22, 2019) (finding that there was substantial evidence to support the ALJ's paragraph B determination because the ALJ explained his findings in detail and relied upon Plaintiff's testimony and examinations from consulting physicians).

Plaintiff further argues that the ALJ improperly disregarded Dr. Paul's opinion that Plaintiff met the requirements of paragraph C.  [Dkt. 15 at 8.]  To satisfy the paragraph C criteria Plaintiff must show:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

>2. Marginal adjustment, that is, you have minimal capacity to adapt to
>changes in your environment or to demands that are not already part of
>your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ concluded that Plaintiff did not satisfy the paragraph C criteria because "there [was] no evidence, as detailed below, of a minimal capacity to adapt to changes in the environment or to demands that are not already part of [Plaintiff's] daily life." [R. 80.] Later in her decision, the ALJ stated that Plaintiff is "college educated, able to handle a business able to handle her own finances, lives alone, is compliant with medication management, can shop by phone and computer, and is able to take care of herself – she can ask for help when needed, goes to therapy regularly, and maintains her household." [R. 84.] "Courts in this Circuit routinely have found that no reasonable fact finder could conclude that a plaintiff could meet the paragraph C criteria when, *inter alia*, the plaintiff functioned mostly independently, including by shopping, going online, traveling independently and managing money, and was observed to have goal-directed thoughts." *Ruiz v. Comm'r Soc. Sec.*, --- F. Supp. 3d ----, 2022 WL 4076323, at *7 (S.D.N.Y. Sept. 6, 2022) (internal alteration omitted). Here, as the ALJ noted, Plaintiff functions mostly independently. Accordingly, there is substantial evidence to support the ALJ's determination that Plaintiff does not meet the paragraph C criteria.

**B.     The ALJ Properly Determined Plaintiff's RFC**

Plaintiff next argues that the RFC was not supported by substantial evidence, because the ALJ improperly rejected Dr. Paul's opinion and instead relied upon her lay interpretation of the treatment notes. [Dkt. 15 at 11-12.] The Acting Commissioner argues that the RFC was supported by substantial evidence and that the ALJ appropriately found that Dr. Paul's opinion

54

was only partially persuasive.  [Dkt. 17 at 22-25.]

 As noted above, the regulations regarding the evaluation of medical records were updated on January 18, 2017.  Under the new framework, the ALJ must provide an explanation for supportability and consistency.  *See Byrd*, 2021 WL 5828021, at *15.  With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  Regarding the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

 Here, the ALJ considered Dr. Paul's opinions and findings, and determined that they were "only partially persuasive as to diagnoses and reported symptoms."  [R. 84.]  In terms of supportability, the ALJ noted that Dr. Paul's January 17, 2020 assessment was not supported by his reports on Plaintiff through December 2020, and further noted that over the course of that time, Dr. Paul only observed a five-pound weight loss and problems sleeping.  [R. 82.]  The ALJ also noted that Dr. Paul's mental status exams indicated that Plaintiff was within normal limits. [*Id.*]  The ALJ also considered Dr. Paul's other medical opinions and noted that the evidence did not support their restrictive findings.  [R. 84.]  In terms of consistency, the ALJ observed that the opinions conflicted Dr. Paul's December 30, 2020 treatment notes,

where [Dr. Paul] noted that the claimant: is adequately groomed; had normal motor activity; was cooperative and well related; had normal rate of speech, volume of speech, articulation of speech, coherence of speech, spontaneity of speech, and language; her general thought process was within normal limits and logical; she had abstract reasoning, normal thought process computation, and denied obsessions and compulsions; her mood was euthymic; her affect was appropriate, full range, and mood-congruent; her attention and concentration was normal, her level of consciousness was alert, and oriented to person, place, time, and purpose of interview; her recent and remote memory was intact; her fund of knowledge was normal and average intelligence; she reported no hallucinations, delusions, overvalued ideas, suicidal ideation, homicidal ideation, or violent ideation; her judgment and insight were fair; and her impulse control was fair.

[*Id.*] Therefore, the ALJ properly considered the factors of supportability and consistency and determined that Dr. Paul's opinions were only partially persuasive.

Plaintiff's contention that the ALJ improperly relied upon her lay interpretation of the treatment notes to craft the RFC is similarly without merit. Indeed, Plaintiff is correct insofar as the ALJ relied upon the treatment notes to craft the RFC. However, this is an appropriate form of medical evidence. As the Second Circuit explicitly held, an ALJ may consider a doctor's treatment notes where they "provide contemporaneous medical assessments of [Plaintiff's] mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity." *Monroe v. Comm'r Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017).

Indeed, the ALJ here considered Dr. Paul's contemporaneous medical assessments of Plaintiff in order to craft the RFC. As noted above, the ALJ observed that while Dr. Paul's "treatment reports showed medication adjustments to address depression and anxiety," he noted "no deficits on mental status examination." [R. 82.] This finding is indeed consistent with Dr. Paul's mental status examinations of Plaintiff. [*See* R. 328, R. 362, R. 464, R. 515, R. 836-40, R. 866-70.] The ALJ also noted that even after Dr. Paul observed that Plaintiff was "tearful, agitated and lonely after her mother's death" at one of their appointments, Dr. Paul's mental

status examination of Plaintiff was still within normal limits.  [R. 83.]  This is consistent with Dr.

Paul's examination of Plaintiff on June 18, 2019.  [R. 836.]

   In addition to considering the treatment notes from Dr. Paul, the ALJ also considered the

treatment notes from Plaintiff's therapists, Ms. Kowalski and Ms. Larigan.  The ALJ observed

that in reports from February 2018, Ms. Kowalski noted that Plaintiff reported increased stress,

feelings of hopelessness, difficulties sleeping, poor appetite, and difficulty in maintaining self-

care and activities of daily living.  [R. 81.]  The ALJ further observed that Plaintiff's mood

improved when she stayed in her own apartment and set boundaries with her mother.  [*Id.*]  On

the whole, the ALJ noted that Plaintiff's symptoms fluctuated and that she was "noted on mental

status examinations as malodorous or disheveled", her mood "consistently presented as

depressed, anxious, fearful, angry, and irritable", and her "affect was full range overall,

occasionally blunted."  [R. 82.]  This is indeed consistent with the treatment notes from Ms.

Kowalski during the relevant time period.[8]  With respect to Plaintiff's appointments with Ms.

Larigan, the ALJ noted that Plaintiff's subjective complaints remained the same and that she had

sessions that involved addressing ways the maintain her hygiene.  [R. 82.]  The ALJ also noted

that Plaintiff had a depressed and anxious mood, an affect that was full-range, appropriate, and

mood congruent, and that Plaintiff showed defensiveness, irritability, and tearfulness during

---

   [8]  *See* R. 328, R. 331, R. 334, R. 337, R. 340, R. 343, R. 346, R. 349, R. 358, R. 362, R. 365, R. 369, R. 375, R. 378, R. 381, R. 384, R. 387, R. 390, R. 393, R. 399, R. 402, R. 405, R. 408, R. 411, R. 414, R. 417, R. 423, R. 426, R. 428, R. 431, R. 434, R. 437, R. 439, R. 441, R. 444, R. 447, R. 451, R. 456, R. 458, R. 461, R. 464, R. 467, R. 470, R. 474, R. 477, R. 480, R. 483, R. 485, R. 487, R. 490, R. 493, R. 496, R. 498, R. 503, R. 510, R. 512, R. 515, R. 518, R. 520, R. 522, R. 798, R. 803-04, R. 807-09, R. 811-15, R. 817-18, R. 821-23, R. 826-39, R. 843-51, R. 853-68, R. 873-74.

some session.  [*Id.*.]  This finding is again consistent with Ms. Larigan's treatment notes.[9]

Accordingly, the ALJ appropriately considered Plaintiff's contemporaneous treatment notes in

crafting Plaintiff's RFC.  *See Monroe*, 676 F. App'x at 8.

       In addition to the treatment notes, the ALJ also appropriately considered the Plaintiff's

social activities and activities of daily living.  *See Monroe*, 676 F. App'x at 8 ("The ALJ also

considered Dr. Wolkoff's well-documented notes relating to [plainitff's] social activities relevant

to her functional capacity . . . ."); *see also Amanda W. v. Comm'r Soc. Sec.*, 2022 WL 3578615,

at *8 (W.D.N.Y. Aug. 19, 2022) ("[T]he ALJ also properly considered Plaintiff's robust activities

of daily living.").  In terms of social activities, the ALJ noted Plaintiff's trip to Florida with a

new partner.  [R. 83.]  In terms of daily activities, the ALJ also observed how these trips to

Florida were in connection with Plaintiff's business of selling patchwork clothing and

accessories.  [*Id.*]  The ALJ specifically noted that after one week-long trip, the treatment notes

from July 11, 2018 indicated that Plaintiff appeared rested and euthymic, but also still anxious

and fearful.  [*Id.*]  The ALJ further noted that later, on April 1, 2019, Plaintiff's treatment plan

indicated that Plaintiff had closed her business.  [*Id.*]  Thus, the ALJ appropriately considered

Plaintiff's social activities and activities of daily living in crafting Plaintiff's RFC.

       Plaintiff also argues that the ALJ impermissibly "cherry-picked" the evidence by relying

upon Dr. Paul's mental status examination from December 30, 2020 to determine the RFC.

[Dkt. 15 at 13-14.]  However, the mental status examination from December 30, 2020 was

consistent with Dr. Paul's mental status examination notes from Plaintiff's alleged onset date

---

    [9]  R. 769-71, R. 779-82, R. 788-90, R. 792-93, R. 795-97, R. 1887, R. 1890-95, R. 1897-1901, R. 1903-08.

through Plaintiff's date of last insured.  [*See* R. 328, R. 362, R. 464, R. 515, R. 836-40, R. 866-70.]  Accordingly, the ALJ did not impermissibly cherry pick the evidence because the RFC finding was "consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  The RFC was therefore supported by substantial evidence.

On February 1, 2023, Plaintiff wrote to draw this Court's attention to *Bey v. Commissioner of Social Security*, 2023 WL 1098183 (S.D.N.Y. Jan. 30, 2023).  [Dkt. 19.] Plaintiff argues that the case is relevant because it addresses "identical" issues to those that Plaintiff raises here.  Contrary to Plaintiff's assertions, *Bey* is inapposite.  First, the ALJ in *Bey* impermissibly committed a procedural error by failing to address supportability when choosing to give weight to the findings in an opinion of a non-examining SSA consultative psychologist over the opinions of two treating providers and two SSA consultative psychologists.  2023 WL 1098183, at *9-10.  In contrast, the ALJ here considered the supportability of Dr. Paul's opinion and determined that it was not supported by his reports on Plaintiff.  Second, the ALJ in *Bey* misstated Plaintiff's testimony regarding her abilities to do activities of daily living.  2023 WL 1098183, at *9.  The ALJ here did not misstate Plaintiff's representations regarding her activities of daily living.  Further, Plaintiff's activities of daily living, such as running a business online, and trips to Florida in support of this business and to visit her new partner, stand in stark contrast to the activities considered in *Bey*, which include cooking, cleaning, reading, watching television, and playing cell phone games.  2023 WL 1098183, at *9.  Finally, the ALJ in *Bey* limited the weight given to four medical opinions by determining they were inconsistent with the treatment records.  2023 WL 1098183, at *9.  The ALJ also impermissibly overlooked substantial portions of the treatment record.  *Id.* at *10.  The ALJ here did not impermissibly

overlook substantial portions of the record, and in contrast considered both Dr. Paul's treatment notes, as well as treatment notes from Plaintiff's therapist.  Accordingly, the holding in *Bey* has no bearing on this case, and the ALJ properly determined Plaintiff's RFC.

## C.     The ALJ Properly Evaluated Plaintiff's Statements

Plaintiff next argues that the ALJ improperly dismissed Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms.  [Dkt. 15 at 22-23.]  Plaintiff contends that the ALJ failed to consider the regulatory factors and instead only considered Plaintiff's daily activities.  [*Id.*]  The Acting Commissioner contends that the ALJ properly engaged in the two-step procedure set forth in the regulations. [Dkt. 17 at 25-26.]

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015).  In evaluating a claimant's credibility, an ALJ must engage in a two-step process.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  If so, the ALJ proceeds to the second step, whereby "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record."  *Id.* (internal quotation marks and alterations omitted).  "The ALJ must consider statements the claimant or others make about his impairment(s), his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of

examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings." *Id.* (internal quotation marks and alterations omitted). Where an ALJ finds that a claimant's testimony is not credible, the ALJ's finding must "be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988). The ALJ's credibility determination is entitled to deference. *See Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).

Here, the ALJ engaged in the required two-step process. First, the ALJ determined that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms[.]" [R. 84.] The ALJ then proceeded to the second step and determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [*Id.*] In the decision, the ALJ considered Plaintiff's Function Report. [R. 83.] The ALJ noted that Plaintiff indicated that she gets easily distracted, has problems paying attention, is unable to complete tasks, and has trouble remembering things. [*Id.*] The ALJ also noted that Plaintiff indicated that it is very difficult for her to perform personal care activities and she requires reminders to take medication. [*Id.*] The ALJ further noted that Plaintiff indicated that she goes outdoors only once a week for therapy, described a lack of interest in her hobbies, and indicated that she does not get along with family members. [*Id.*] Nonetheless, the ALJ also observed that Plaintiff indicated that she does not require special reminders to take care of personal needs or grooming, she can prepare simple microwave dinners, she has a driver's license, and is able to shop by phone and computer. [*Id.*] The ALJ further noted that Plaintiff could manage money and socializes with others in person and on the

computer.  [*Id.*]  In this Circuit, activities of daily living are an appropriate basis for rejecting a Plaintiff's statements.  *See Poupore*, 566 F.3d at 307 (noting that "the ALJ properly found that [claimant's] testimony about his limitations was not fully credible" based in part on the fact that the claimant was able to engage in activities of daily living.).

Further, contrary to Plaintiff's argument that the ALJ was required to consider all of the regulatory factors, "the Second Circuit has held in cases where the evidence 'permits [the Court] to glean the rationale of an ALJ's decision,' the decision need not mention 'every item of testimony' or 'explain[ ] why [the ALJ] considered particular evidence unpersuasive or insufficient to lead to a conclusion of disability.'" *Barthelemy v. Saul*, 2019 WL 5955415, at *14 (S.D.N.Y. Nov. 13, 2019) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Because this Court can glean the ALJ's rationale behind the decision to consider Plaintiff's statements not entirely consistent with the record, the ALJ was not required to consider all of the regulatory factors.  Thus, I conclude that the ALJ properly evaluated Plaintiff's statements.

**D.    The Vocational Expert Did Not Need to Use the O*NET**

Plaintiff next takes issue with the three occupations that the ALJ identified as positions that Plaintiff could occupy with her RFC.  Plaintiff argues that the three occupations are no longer unskilled and that they require more than occasional contact with the general public. [Dkt. 15 at 24-27.]  Plaintiff asserts these arguments based upon information obtained via the O*Net.  [*Id.*]  The Acting Commissioner argues that the O*Net is not binding on the ALJ.  [Dkt. 17 at 28.]  The Acting Commissioner is correct.

The O*Net (Occupation Information Network) is "a jobs database that contains job descriptions that are different from the descriptions in the DOT."  *Nicoletti v. Comm'r Soc. Sec.*

*Admin.*, 2022 WL 6250371, at *15 (S.D.N.Y. Feb. 28, 2022), *report and recommendation adopted* 2022 WL 4592902 (S.D.N.Y. Sept. 30, 2022).  Similar to the plaintiff in *Nicoletti*, Plaintiff "does not point to any caselaw from within the Second Circuit holding the VE's reliance on the DOT's job descriptions is improper. Nor does Plaintiff reference any authority calling into doubt the accuracy of job descriptions contained in the DOT as compared to those contained in the O*NET but, rather, baldly concludes that because the DOT's job descriptions have not been updated since 1991, they must be less accurate than those found on the O*NET database." *Id.*  Further, while the "regulations specifically contemplate the Administration's reliance on the DOT", they do not contemplate the O*Net at all.  *Russ v. Comm'r Soc. Sec.*, 582 F. Supp. 3d 151, 166-67 (S.D.N.Y. 2022) (citing 20 C.F.R. § 416.996(d)).  Accordingly, the Vocational Expert did not err in relying on the DOT descriptions and the ALJ appropriately adopted the vocational expert's findings.

**E.    The ALJ's Hypothetical Was Not Defective**

Plaintiff's final argument is that the hypothetical the ALJ presented to the Vocational Expert was flawed because it did not include the findings of Dr. Paul's opinion.  However, as discussed *supra* Part IV(B), the ALJ properly analyzed Dr. Paul's opinion. Because the hypothetical that the ALJ presented to the Vocational Expert was "based on a [RFC] finding that is supported by substantial evidence, the hypothetical is proper and the ALJ is entitled to rely on the vocational expert's testimony." *Snyder v. Colvin*, 667 F. App'x 319, 321 (2d Cir. 2016) (summary order).  Accordingly, the ALJ's hypothetical was appropriate and the ALJ properly relied on the Vocational Expert's findings based on that hypothetical.

**V.  CONCLUSION**

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is

**DENIED** and the Acting Commissioner's cross-motion for judgment on the pleadings is

**GRANTED**. The Clerk of Court is directed to terminate the pending motions [Dkts. 14 and 16]

and close this case.

Dated: February 15, 2023
        White Plains, New York

                                      Respectfully Submitted,

                                      _____
                                      Paul E. Davison, U.S.M.J.